UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CLAUDIA R., ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 2:20-CV-329-JVB |
| ) | |
| KILOLO KIJAKAZI, Acting Commissioner ) | |
| of the Social Security Administration, ) | |
|     Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Claudia R. seeks judicial review of the Social Security Commissioner's decision denying her disability benefits and asks this Court to remand the case. For the reasons below, this Court remands the Administrative Law Judge's decision.

**PROCEDURAL BACKGROUND**

Plaintiff applied for disability insurance benefits on January 12, 2018, and for supplemental social security income benefits on April 10, 2018. In her application, Plaintiff alleged that she became disabled on November 10, 2014. (AR 15). Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2014. (AR 17). After a hearing in 2019, the Administrative Law Judge (ALJ) found that Plaintiff did not have any severe impairments from her alleged onset date of November 10, 2014, through her date last insured. *Id.* However, the ALJ found that since April 10, 2018, her supplemental social security income benefits application date, Plaintiff has suffered from the severe impairments of history of cerebral vascular accident (CVA), seizure disorder, medulloblastoma, and hypotension. (AR 20). The ALJ also found that Plaintiff suffered from the non-severe impairment of headaches, mixed hearing loss, and hyponatremia. *Id.* The ALJ found that Plaintiff is capable of performing her past relevant work as an employment training specialist and a secondary school teacher. (AR 23). Therefore, the ALJ found her to be

not disabled from November 10, 2014 through the date of the decision. *Id.* This decision became final when the Appeals Council denied Plaintiff's request for review. (AR 1).

## STANDARD OF REVIEW

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court will ensure that the ALJ built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). This requires the ALJ to "confront the [plaintiff's] evidence" and "explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support [the ALJ's] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

## DISABILITY STANDARD

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act:

> (1) Whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether she can perform her past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## ANALYSIS

Plaintiff offers three arguments to support her request for remand: the ALJ erred in making the RFC determination; the ALJ erred in the weighing medical opinion evidence; and the ALJ erred in assessing her subjective symptoms.

**A. Subjective Symptoms**

An ALJ's subjective symptom analysis will be afforded "considerable deference" and will be overturned only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). An ALJ must consider a claimant's statements about his or her symptoms, including pain, and how these symptoms affect the claimant's activities of daily living and ability to work. 20 C.F.R. § 404.1529(a). ALJs must weigh the subjective complaints, the relevant objective medical evidence, and any other evidence of the following:

> (1) The individual's daily activities;
> (2) Location, duration, frequency, and intensity of pain or other symptoms;
> (3) Precipitating and aggravating factors;
> (4) Type, dosage, effectiveness, and side effects of any medication;
> (5) Treatment, other than medication, for relief of pain or other symptoms;
> (6) Other measures taken to relieve pain or other symptoms;
> (7) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. § 404.1529(c)(3); *see also* SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). The "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2.

Plaintiff asserts that the ALJ erred in evaluating her subjective symptoms and improperly relied on objective evidence in dismissing her subjective symptoms. The ALJ found that Plaintiff's subjective symptom statements "are not entirely consistent with the medical evidence and other evidence in the record." (AR 22). The ALJ noted that Plaintiff reported in her function report that she could care for her own personal needs, and that she went to the store and out to eat with her family once a month. *Id.* The ALJ found that despite testifying to right sided weakness, balance issues, and dizziness, her treatment notes showed that she "typically denied any dizziness" and had normal coordination. *Id.* The ALJ further noted that she had improvement in her range of motion, strength, and balance with therapy, and that there were minimal references to falls. *Id.*

3

Finally, the ALJ noted that despite "some mention of memory issues," her treatment provider did not find that she had a memory impairment. *Id.*

As an initial matter, the ALJ's finding that Plaintiff reported being able to care for her own personal needs does not accurately portray the evidence in the record. In the function report, Plaintiff neither checked the box indicating "no problem with personal care," nor did she note anything specific areas in which her conditions affect her ability to complete personal care. (AR 195). However, she did testify at the hearing that she needs help dressing everyday due to right sided weakness and stiffness in her right leg. (AR 51-52). The medical record also indicates that she requires some help with activities of daily living, especially with showering. (AR 426, 433, 489, 500). One treatment note states that she requires assistance from her family for "all functional modalities." (AR 498). The ALJ has chosen one small portion of her function report to support his assertion that she requires no help with her personal care, when both her testimony and the medical record indicate she requires at least some help with her daily activities. This amounts to impermissible cherry-picking. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). It is the ALJ's responsibility to resolve conflicts in the evidence; however, ignoring lines of evidence contrary to the ALJ's findings is not a valid form of evidentiary conflict resolution.

The ALJ also did not explain how Plaintiff's ability to go to the store and out to eat with family once a month contradicted her subjective symptoms. It is unclear from the ALJ's decision how Plaintiff's ability to shop once a month and be taken out to eat with her family once a month contradicts her complaints of pain, imbalance, dizziness, and struggles with memory. *See Cullinan*

*v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) ("[t]he ALJ did not explain why doing these household chores was inconsistent with Cullinan's description of her pain and limited mobility. Nor is any inconsistency obvious, so the ALJ did not substantiate the finding that Cullinan's daily activities reveal any exaggeration of Cullinan's limitations."). The ALJ has not built a logical bridge from the evidence to his conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014).

The ALJ also cherry-picked evidence to refute Plaintiff's complaints of fatigue, dizziness, imbalance, and right sided weakness. The ALJ stated that Plaintiff "did complain of imbalance at times but typically denied any dizziness." (AR 22). However, this does not accurately describe the evidence given in the record. While there are treatment notes that indicate Plaintiff denied dizziness, there are also multiple treatment notes that indicate Plaintiff was suffering from dizziness, loss of equilibrium, or vertigo. (AR 458, 484, 533, 559, 632-63, 2349, 2353, 2360, 2364, 2443, 2446). Confusingly, some treatment notes both indicate that Plaintiff reported struggling with dizziness yet also denied dizziness. For instance, in November 2016, Plaintiff's chief complaint was dizziness, yet the next paragraph indicated that she denied syncope or dizziness. (AR 2360). However, other medical notes, such as one from March 2017, report that Plaintiff complained of dizziness and feeling off balance with no contradictions. (AR 2353). The ALJ did not acknowledge Plaintiff's frequent complaints of dizziness throughout the record, and instead relies on a few treatment notes that indicate Plaintiff was not complaining of dizziness. The ALJ also failed acknowledge the seemingly contradictory treatment notes, and instead the ALJ chose to rely on solely the evidence that supported his findings.

The ALJ also relied on regular reports of normal coordination in dismissing Plaintiff's complaints of imbalance and dizziness. As with the treatment notes regarding dizziness, treatment notes provide contradicting evidence regarding Plaintiff's coordination. Treatment notes indicate

5

that Plaintiff displayed lack of coordination and imbalance under the neurological review of symptoms, yet her coordination tests were listed as normal later in the same treatment note. (AR 432-36, 439-42, 445-48, 450-52, 497-502). The ALJ has provided no explanation for why he accepted one portion of the treatment note while rejecting the other portion, when the treatment notes are internally contradictory. Moreover, normal coordination does not contradict Plaintiff's complaints of dizziness and imbalance. Multiple treatment notes that report normal coordination also show a positive Romberg test, which indicates disequilibrium due to sensory or motor disorders.[1] (AR 475, 478, 484). The positive Romberg tests are more indicative of continued struggles with imbalance than the reports of normal coordination. Yet the ALJ relies on the normal coordination testing without discussing the positive Romberg tests.

      The ALJ also did not provide any discussion or analysis of Plaintiff's continued complaints of fatigue. In the entire RFC discussion, the ALJ only mentions Plaintiff's complaints of fatigue once, stating that in February 2019, she complained of "some fatigue." (AR 22). There is no discussion of Plaintiff's fatigue in the subjective symptom analysis, yet fatigue is one of the few symptoms that remains a constant throughout the medical record. Plaintiff's treatment providers document her fatigue throughout the medical record and across specialties. (AR 383, 450, 454, 458, 506, 509, 512, 524, 533, 559, 2309, 2349, 2360, 2364, 2369, 2440, 2443, 2446, 2764). The ALJ does not discuss Plaintiff's complaints of fatigue anywhere in the RFC analysis, and the Court cannot be sure the ALJ properly considered Plaintiff's fatigue without some discussion of Plaintiff's continued complaints of fatigue.

      Finally, the ALJ states that despite "some mention of memory issues … her provider found that she did not have a memory impairment." (AR 22). The ALJ cites to a single treatment note

---

[1] https://www.physio-pedia.com/Romberg_Test (last visited January 20, 2022).

from a nephrology appointment for hyponatremia, hypotension, and electrolyte imbalance that indicates Plaintiff was "alert and oriented x3 with no impairment of recent or remote memory." (AR 505-06). However, a single notation from her nephrologist regarding her mental status is another instance of impermissible cherry-picking. Other treatment notes from the nephrologist indicate that Plaintiff is suffering from decreased memory. (AR 2440, 2446). Plaintiff's neurologist frequently noted Plaintiff's memory loss and found she suffered from a "baseline cognitive impairment with concentration deficit." (AR 456, 460, 463, 465, 475, 2362). Other treatment notes continue to indicate struggles with memory loss. (AR 424, 431, 498, 613, 2349, 2360, 2440, 2446, 2764). As with her dizziness and lack of coordination, some of the neurologist's treatment notes indicate that Plaintiff is suffering from memory loss, yet later states that Plaintiff is not suffering from memory loss. One such treatment note indicates memory "issues" as a chief complaint, finds her memory loss to be stable in the next paragraph, and then indicates Plaintiff has no memory loss further down the page. (AR 2349). Other treatment notes indicate memory "issues" as a chief complaint but find her memory loss to be present but stable. (AR 2360).

The ALJ cherry-picked a single medical note from Plaintiff's nephrologist to contradict Plaintiff's complaints of memory loss without considering her neurologist's continued documentation of struggles with memory loss and diagnosis of a baseline cognitive impairment with concentration deficit. This error requires remand.

### B. Other Issues

Plaintiff also raises additional issues regarding the RFC and other medical opinions. Because the ALJ erred in evaluating Plaintiff's subjective symptoms, remand is appropriate. Proper analysis and discussion of Plaintiff's subjective symptoms and a full examination of the

medical evidence may alter the discussion and analysis of these other areas. The Court remands this case due to the ALJ's failure to properly analyze Plaintiff's subjective symptoms.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 17], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further administrative proceedings.

SO ORDERED on January 24, 2022.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN, JUDGE
UNITED STATES DISTRICT COURT
